Robert Ray MOORE *v.* STATE of Arkansas

CR 93-754                                    864 S.W.2d 863

Supreme Court of Arkansas
Opinion delivered November 15, 1993

*Larry J. Steele*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. Robert Ray Moore appeals from a conviction of DWI IV and of driving on a suspended driver's license. He raises three points on appeal. He contends the evidence was not sufficient to show he violated Ark. Code Ann. § 5-65-101 (1987) because he was not proven to have been in control of a vehicle while inebriated. We hold the evidence was sufficient. Secondly, he contends records of his three prior DWI convictions should not have been admitted into evidence. We hold the records were sufficient and properly admitted. Finally, he contends the Trial Court erred in refusing to admit into evidence an identification card belonging to another person he claimed to have been the driver of the car. We conclude the evidence offered was irrelevant. The convictions are affirmed.

Robert Ray Moore was found by Vernon Nelson, a passing motorist, some distance from a car which had run off the road into a ditch. After declining Moore's request to pull the car out of the ditch, Nelson took Moore to the Walnut Ridge Police Station. Moore informed officers he had been driving and lost control of his vehicle. He was given a breathalyzer test and registered .24% blood alcohol by weight. The presence of .10% alcohol, or more, in the blood of a motor vehicle driver is unlawful. Moore subsequently denied driving the vehicle.

Mr. Nelson testified that, when he first saw Moore, he thought Moore was having a heart attack as he observed him stand up, fall down, and then attempt to get up again. Mr. Nelson investigated and found Moore to be obviously inebriated. Mr. Moore told Mr. Nelson it was his (Robert Ray Moore's) car Nelson had observed in the ditch.

Mr. Moore told a state policeman, who advised Moore of

his *Miranda* rights, that he had been in his vehicle alone and had just run off into a ditch and had had nothing to drink after the accident. No argument has been made about Mr. Moore being under the influence of alcohol at the time he spoke with the officers.

A police officer testified to administering the breathalyzer and presented the results of the test which were admitted into evidence. It was stipulated that at the time of the incident Moore's operator's license was suspended, and the prosecution rested its case. A motion for a directed verdict based on insufficiency of the evidence was made and denied.

Robert Ray Moore took the stand and stated his brother, Bobby Gene Moore, was the driver when the car ran into the ditch. He stated he, Robert Ray Moore, passed out shortly after he was helped into the car and awoke alone in the ditch some time later. Moore testified that he told the state policeman that Bob Moore had been driving the car, but that he had meant his brother. He then explained that his brother was referred to as "Little Bob" and he was called "Big Bob" because of the similarity in their names.

Robert Ray Moore explained that he had not seen "Little Bob" lately and knew not his whereabouts, but he proffered a photo identification card purportedly identifying Bobby Gene Moore to verify the brother's existence. After cross-examination, the defense rested and renewed its directed verdict motion.

The parties made arguments concerning proof of prior DWI convictions. Counsel for Moore objected to the State's evidence based on the fact that the docket sheets offered were not definite enough, particularly with respect to whether Robert Ray Moore's right to counsel had been accorded in each prior case. The prosecutor argued that each of the three prior conviction records tendered reflected a waiver of counsel and, therefore, each was admissible. A motion to suppress them was denied. The jury returned guilty verdicts.

### 1. Sufficiency of the evidence

Robert Ray Moore argues there is no evidence he was in physical control of the vehicle and points out that there is no

evidence that he even had access to the vehicle keys as no officer searched him and no keys were found in the vehicle.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Glick* v. *State*, 275 Ark. 34, 627 S.W.2d 14 (1982). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas* v. *State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach* v. *State*, 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the proof in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. *Brown* v. *State*, 309 Ark. 503, 832 S.W.2d 477 (1992).

The fact that the officers did not locate the keys to the car is only some evidence whether Moore had been in possession of them. The only question before the Trial Court was one of credibility. That was for the jury to determine. *Urquhart* v. *State*, 273 Ark. 486, 621 S.W.2d 218 (1981). The "Big Bob" - "Little Bob" story was obviously not accepted by the jury which, instead, credited the evidence provided by the officers and Mr. Nelson with respect to Mr. Moore's statements, made shortly after he was picked up on the road, that he had been driving.

### 2. Suppression of proof of prior convictions

Mr. Moore cites *Neville* v. *State*, 41 Ark. App. 65, 848 S.W.2d 947 (1993), to support his argument that the certified copies of the docket sheets reflecting his prior convictions were not definite enough to show his right to counsel had been satisfied or waived, noting specifically that one of the sheets just had a column with check marks on it with a box checked showing waiver of attorney while another had a rubber stamp reflecting a waiver of attorney and no judge's signature. The third is also criticized because it is not signed by a municipal judge. The *Neville* case is clearly distinguishable and provides no support for Moore's challenge to his conviction. The problem in the *Neville* case was that the records produced by the State contained names and the abbreviation "Atty" without statements as to whether those were references to attorneys representing the accused or the State.

Here there is a clear indication on each of the docket sheets showing a prior DWI conviction that Moore waived the right to counsel. The docket sheets satisfy the requirements of Ark. Code Ann. § 16-90-204 (1987) which establishes the requirements for proof of prior convictions. Each is a duly certified copy of the record of a prior conviction. There is no requirement that the document be signed by any court, nor is there anything in the statute which prohibits a checklist format. As the documents comply with the requirements of the statute, there was no error in the Trial Court's refusal to suppress them.

### 3. The ID card

The Trial Court ruled that the ID document was too old to be relevant. The ruling was correct. In *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993), we reiterated the rule that trial courts have a wide latitude of discretion in the admission of evidence, and we do not reverse absent an abuse of that discretion.

It is enough to note that the card did not identify the man photographed as "Little Bob." It was simply a card bearing a photograph, apparently taken by the State of Michigan some 10 years earlier, of a man. It had on it writing identifying the person in the photograph as having the same surname as Robert Ray Moore. It did not in any way tend to show that the person depicted was or even could have been the driver of the car in question here.

Affirmed.