Cite as 2021 Ark. App. 34

# ARKANSAS COURT OF APPEALS
## DIVISION III
**No.** CR–20–179

| | |
|---|---|
| STEPHANE GERRIT FERRY<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered:** January 27, 2021<br><br>APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23CR-18-1017]<br><br>HONORABLE H.G. FOSTER, JUDGE<br><br>AFFIRMED |

**PHILLIP T. WHITEAKER, Judge**

Appellant Stephane Ferry was convicted by the Faulkner County Circuit Court of one count of filing a false police report, a Class A misdemeanor. He was sentenced to one month in the Faulkner County Detention Center with an additional sixty days' suspended imposition of sentence and fined $1000, which was also suspended on the condition that Ferry comply with a no-contact order. On appeal, Ferry challenges the sufficiency of the evidence supporting his conviction. We find no error and affirm.

## I. *Background*

Ferry, who lives in Conway, is a constituent of state senator Jason Rapert. Throughout 2017, Ferry attempted to contact Rapert numerous times by phone, email, and other means. After months of Ferry's unsuccessful attempts at contact, Rapert initiated a phone call to Ferry on January 23, 2018. Because of past tensions between Rapert and Ferry, both men recorded the phone conversation; however, Ferry's recording captured only part of the conversation, while Rapert's recording captured the entire conversation. During the

conversation, Rapert several times expressed his belief that Ferry was harassing him, demanded that Ferry discontinue his tactics, and stated his intention to report Ferry to law enforcement if the harassment continued.

Within an hour of concluding the conversation, Ferry went to the Conway Police Department and filed a police report against Rapert. Officer Allan Cullum took the report from Ferry.[1] Ferry asked whether Rapert had already contacted the police and was informed that he had not. Ferry then reported that Rapert had threatened him over the phone and that he wanted to file charges against the senator. When Cullum asked what Rapert had said, Ferry said that "he was sending people after me." As Ferry began recounting the phone conversation with Rapert, he told Cullum that he refused to give Rapert his address, to which Rapert purportedly replied, "Well, that's okay, I'll get people after you. I'll have people to come after you." On the basis of Ferry's version of events, Cullum prepared a police report that reflected the offense of second-degree terroristic threatening.

Cullum's report was referred to Detective Thomas Cole for investigation. As part of his investigation, Cole reviewed the videotape from the police department lobby and then contacted Ferry. Cole asked Ferry what Rapert had told him, and Ferry reiterated that Rapert had said, "I have people to come after you." Cole asked Ferry if he had perceived this statement as a threat, and Ferry said that he did. Ferry told Cole that he had a partial recording of his conversation with Rapert, which he emailed to Cole. Ferry told Cole, however, that the recording had cut off at some point because of a "technical issue" with

[1]A video camera in the lobby of the police department recorded the exchange between Ferry and Officer Cullum. The recording of the encounter was played during Ferry's bench trial, as were Ferry's and Rapert's recordings of their phone conversation.

2

his phone, so that the "actual threat itself occurred after the recording had cut off" and was thus not contained on Ferry's recording.

After reviewing Ferry's version of the recording, Cole contacted Rapert, who sent Cole his recording of the entire conversation. Cole listened to Rapert's recording to see if he could locate the specific threat Ferry claimed Rapert had made, but he was unable to find it anywhere in the recording. Cole thus determined that Ferry's accusation against Rapert was false, so he initiated a new police report against Ferry, which he took to the City Attorney's Office to review it for potential charges for filing a false police report.

Ferry was subsequently charged with and convicted of filing a false police report in the Conway District Court. He appealed to the Faulkner County Circuit Court, where the matter proceeded to a bench trial in August 2019. The State presented testimony from Rapert, Cullum, and Cole, who essentially testified as set out above. The circuit court also received into evidence the recordings from Ferry, Rapert, and the police department.

After the circuit court denied Ferry's motion to dismiss, Ferry testified in his own behalf. He was questioned extensively about what was and was not said during his conversation with Rapert and about the recordings that had been received into evidence. He admitted that the recording from Rapert was a complete recording of the conversation, while his was only a partial recording. He explained, however, that the reason for his partial recording was that his phone cut off the recording because its memory was too full, not because he was trying to manipulate anything. He further admitted that none of the recordings reflected Rapert's alleged statement that he would "send his people after" Ferry. Ferry explained that when he listened to the whole recording of what he had said at the

police station, he realized that he had paraphrased the conversation between himself and Rapert.

Nevertheless, Ferry explained that he made a report to the Conway Police because he felt threatened by Rapert. When asked if he regarded Rapert's statements about turning him in to law enforcement as threats, he replied, "Not at first." He said he determined it was a threat after he spoke to his attorney, who advised him to look up the definition of a threat. Ferry also testified that he had heard about an incident in which Rapert allegedly threatened another constituent with a gun in a Lowe's parking lot, which contributed to his impression that Rapert had threatened him.[2] From the definition of threat and the alleged incident in the Lowe's parking lot, Ferry interpreted the reference to "having law enforcement investigate" him as a threat of "having people come after" him.

The circuit court found Ferry guilty and sentenced him as described above. Ferry filed a timely notice of appeal and now challenges the sufficiency of the evidence supporting his conviction.

## II. *Standard of Review*

A motion to dismiss in a bench trial is a challenge to the sufficiency of the evidence. *Sharp v. State*, 2019 Ark. App. 506, 588 S.W.3d 770. The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Polk v. State*, 348 Ark. 446, 73 S.W.3d 609 (2002). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion

---

[2]The alleged threatening statement was posted to Rapert's "Rapert for Senate" Twitter account and said, "Not smart to come up and harass somebody in a parking lot who's carrying a handgun. Better be glad you decided to walk away. #armed&ready."

or conjecture. *Id*. When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Cain v. State*, 2020 Ark. App. 465, 609 S.W.3d 680. Only evidence supporting the verdict will be considered. *Id*.

### III.  *Analysis*

We begin by setting out the statute under which Ferry was convicted, Arkansas Code Annotated section 5-54-122 (Repl. 2016), which makes it a crime to file a false police report. A person commits the offense of filing a false report if he or she files a report with any law enforcement agency or prosecuting attorney's office of any alleged criminal wrongdoing on the part of another person knowing that the report is false. Ark. Code Ann. § 5-54-122(b).[3] As the State notes in its brief, the statute does not define the phrase "false report," but *Black's Law Dictionary* defines it as "the criminal offense of informing law enforcement about *a crime that did not occur*." *Black's Law Dictionary* (11th ed. 2019) (emphasis added). Thus, there are three elements to the crime of filing a false police report: (1) filing a report with any law enforcement agency or prosecuting attorney's office (2) of any alleged criminal wrongdoing on the part of another person (3) knowing that the report is false.

On appeal, Ferry does not dispute the first two elements of the offense. Ferry unquestionably filed a report with the Conway Police Department, thereby satisfying the first element. Ferry undisputedly accused Rapert of threatening him: he told the police that Rapert "just threatened me on a phone call" and said "that he was sending people after me." Officer Cullum testified that he recorded these complaints as allegations of second-degree

---

[3]A "report" means "any communication, either written or oral, sworn or unsworn." Ark. Code Ann. § 5-54-122(a).

terroristic threatening, which is a criminal offense. *See* Ark. Code Ann. § 5-13-301(b)(1) (Repl. 2013). The second element of the offense was therefore satisfied.

Instead, Ferry focuses on the third element of filing a false police report and argues that the State failed to present sufficient evidence that he knew the report was false. He contends that the statements he made to the Conway Police Department about Rapert's alleged terroristic threatening were either "sufficiently close to the words of the call" or were "accurate subjective descriptions" of his reaction to the call; therefore, he argues, the statements were not themselves false nor did he know they were false when he made them.

A person acts knowingly with respect to (1) his or her conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or (2) a result of his or her conduct when he or she is aware that it is practically certain that his or her conduct will cause the result. Ark. Code Ann. § 5-2-202(b)(A)−(B) (Repl. 2013). This court has frequently remarked that a person's intent or state of mind is rarely capable of proof by direct evidence and most often is inferred from the circumstances. *See Bowman v. State*, 2019 Ark. App. 469, at 6, 588 S.W.3d 129, 133; *Devor v. State*, 2012 Ark. App. 82, 389 S.W.3d 22; *Green v. State*, 2011 Ark. App. 700. Moreover, the credibility of a witness is a question for the trier of fact, not the appellate court. *Price v. State*, 2019 Ark. 323, at 6, 588 S.W.3d 1, 5; *Clark v. State*, 2015 Ark. App. 679, at 6, 477 S.W.3d 544, 548 (deferring to circuit court's credibility determination regarding defendant's professed lack of knowledge about the presence of contraband).

Here, the circuit court focused on one aspect of Ferry's report: the allegation that Rapert allegedly said he was sending people after Ferry.[4] The court specifically found that when Ferry reported "he's sending people after me," that was the threat, and it concluded that when Ferry made this allegation he knew the allegation was false. Our task on appeal is to determine whether there was substantial evidence that Ferry knew Rapert did not actually threaten to "send people after [him]."

At trial, Ferry denied having any intention to say anything to the Conway Police Department that was false and claimed that he had merely "paraphrased what I remembered [Rapert] saying." Although he conceded that Rapert never actually said he was "sending anybody after" him,[5] Ferry argued at trial that he subjectively believed Rapert had threatened him and that the existence of Rapert's allegedly threatening tweet (mentioned *supra* note 2) substantiated his subjective belief.

The circuit court ultimately—and very specifically—concluded that Ferry's testimony and arguments were not credible:

> Now, Mr. Ferry's argument that [his statements to police were] a paraphrase and he meant that Senator Rapert had said he was going to have him investigated, I don't believe it. And sometimes it comes down to people say things, and you either believe them or you don't. I don't believe him. Not for a minute. I believe he went to the Conway Police Department to try to trump Senator Rapert using the system.

---

[4]Before trial, Ferry sought a bill of particulars asking the State to specify which particular statements of his were alleged to be false; in its response, the State identified several statements from Ferry that it contended were false. Both below and on appeal, Ferry argues that the State failed to prove the falsity of each alleged statement identified within the bill of particulars. The purpose of a bill of particulars is to acquaint the defense with sufficient information so that a defense can be prepared. *Limber v. State*, 264 Ark. 479, 572 S.W.2d 402 (1978). Ferry cites no authority to the effect that the State must prove each instance listed in a bill of particulars to achieve a conviction for the single offense charged.

[5]During cross-examination, the State expressly asked Ferry whether Rapert ever actually said he was going to send people after Ferry, and Ferry replied no.

Mr. Ferry didn't commit this offense when he just walked into the Conway Police Department. He didn't commit this offense when he said, I know he has threatened someone in the past with a gun. He committed this offense when he walked into the Conway Police Department and embarked on a course of conduct that resulted in a false police report being filed based on false information that Mr. Ferry knew was false.

Again, my ruling [is] based on my opportunity to observe the witnesses, to evaluate their credibility, and to look at the consistency of their testimony, and what I believe to be reasonable. . . . There is a difference between objective and subjective, and there are times when the subjective standard must be looked at. But the boundaries of a subjective conclusion are established by reasonableness . . . [and] I do not find that there is evidence to support that Senator Rapert threatened him in a telephone call.

The circuit court thus found that Ferry had knowingly filed a false report on the basis of its credibility determination. The circuit court listened to Ferry's recording and Rapert's recording, watched and listened to the recording from the police department, observed the testimony of the witnesses in the courtroom, and ultimately reached its decision on the basis of the evidence before it and its assessment of the credibility of the witnesses. Despite Ferry's arguments that he subjectively believed that Rapert had threatened him, the circuit court did not believe Ferry. We are "not at liberty to disturb the circuit court's credibility determinations on appeal." *Collins v. State*, 2014 Ark. App. 574, at 10, 446 S.W.3d 199, 206; *Gonder v. State*, 95 Ark. App. 144, 234 S.W.3d 887 (2006). Accordingly, we affirm Ferry's conviction for filing a false police report.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellee.